UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEFANO FARSURA and SF CAPITAL
PARTNERS LLC,

       Plaintiffs,

   -against-

QC TERME US CORP., MAP S.R.L.,
WHITEBRIDGE INVESTMENTS S.P.A., and
GIUTURNA INVESTMENTS S.P.A.,

       Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  9/13/2022

21 Civ. 9030 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

 Plaintiffs Stefano Farsura and SF Capital Partners LLC ("SF Capital Partners") bring this action against Defendants QC Terme US Corp., MAP s.r.l. ("MAP"), Whitebridge Investments S.p.A. ("Whitebridge"), and Giuturna Investments S.p.A. ("Giuturna"), alleging that certain Defendants "repudiat[ed] . . . an agreement" when they "fr[oze] [Plaintiff Farsura] out of [an] enterprise" and "forc[ed] him out of the parties' jointly-held corporate entity."  Compl. ¶ 1, ECF No. 1-2.  Plaintiffs also allege that other Defendants played a role in the freeze-out.  *See id.* ¶ 6. Plaintiffs bring causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of joint venture agreement, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, promissory estoppel, unjust enrichment, and tortious interference with contract.  *Id.* ¶¶ 118–98.  Plaintiffs seek both damages and equitable relief.  *See id.* ¶¶ 118–201.

 Defendants move to dismiss the complaint for lack of personal jurisdiction over Defendants MAP, Whitebridge, and Giuturna under Rule of Federal Procedure 12(b)(1), and failure to state a

claim under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 34.  For the reasons stated below, the motion is GRANTED in part and DENIED in part.[1]

## BACKGROUND[2]

Plaintiff Farsura met Saverio Quadrio Curzio in Italy in the fall of 2011.  Compl. ¶ 26.  At the time, Farsura, a New York City real estate developer born in Italy, was "hold[ing] meetings with potential investors for his New York real estate activities."  *Id.* ¶¶ 25–26.  He knew about Quadrio Curzio and his brother Andrea's spa business, branded "QC Terme," and "welcomed the prospect of discussing how the . . . family might invest in [Farsura's] New York City real estate ventures."  *Id.* ¶¶ 26–28.  The QC Terme business was doing well, and Quadrio Curzio was interested in expanding the brothers' business to North America.  *Id.* ¶ 29.

Once Farsura returned to New York, he assessed the competition and "confirmed his sense that the QC Terme spa concept had promise in New York."  *Id.* ¶ 31.  He told Quadrio Curzio about his idea, and Quadrio Curzio booked a trip to New York to explore the market with Farsura.  *Id.* ¶ 32.  In October 2011, the pair spent an evening at a spa facility in Queens discussing their vision for QC Terme's expansion in North America.  *Id.* ¶ 33.  Plaintiffs allege that, "[t]hat night, . . . Farsura and QC Terme (through [Quadrio Curzio]) decided to partner together in a venture to bring the QC Terme spa concept to North America—an agreement that was subsequently confirmed in multiple meetings in New York and Italy."  *Id.* ¶ 35.

A few weeks after that trip, on November 19, 2011, Farsura and QC Terme's general manager Francesco Varni exchanged emails which discussed the elements of an agreement and a

---

[1] Plaintiffs' motion for leave to file a sur-reply, ECF No. 43, is also DENIED.  The Court shall not consider the allegedly "new" material in Defendants' reply brief, ECF No. 39-1.  ECF No. 43.

[2] The following facts are taken from the complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

proposed corporate structure.  *See id.* ¶¶ 36–37.  On November 22, 2011, Farsura accepted QC Terme's offer and asked follow-up questions related to Farsura's contributions to the venture.  *Id.* ¶ 38.  On November 29, 2011, Varni wrote: "[W]e are very pleased that the approach is shared and we will try to implement it quickly."  *Id.* ¶ 39 (alterations in original).  He also said that Farsura would use his skills and relationships to pick a location for the spa business and search for investors, financing, and construction, and that his activities would "constitute a sort of contribution" to the value of his equity.  *Id.*  In January 2012, Farsura dined with the Quadrio Curzio brothers and Farsura's business partner in New York.  *Id.* ¶ 41.  There, Farsura proposed increasing his stake in the North American business operations from 20% to 25%.  *Id.*  The brothers "negotiated him down from 25% to 22%, and the deal was struck."  *Id.*  Plaintiffs allege that

> the parties (Defendant MAP . . . , through the [Quadrio Curzio] brothers and Varni, on the one hand, and Farsura, on the other hand) formed a binding agreement to operate a joint venture together to open spa facilities in North America modeled after the QC Terme concept, under which Farsura would be a 22% minority holder in the enterprise in exchange for lending his New York expertise and relationships with local construction professionals; scouting and securing locations; securing financing and investors; and managing the facilities' pre-construction planning and development.

*Id.* ¶ 42.

The parties, "[a]cting on this agreement," then formed a Delaware limited liability company, QC Terme US Holding LLC ("QC Terme US Holding"),[3] to hold the equity interests in the North American spa facilities.  *Id.* ¶ 43.  Plaintiff SF Capital Partners held a 22% stake in QC Terme US Holding, and QC Terme US Corp. held a 78% stake in QC Terme US Holding.  *Id.*  An operating agreement was drafted for QC Terme US Holding to govern its operations.  *Id.* ¶ 44.  The drafting and negotiation of these terms occurred roughly between 2014 and 2017.  *Id.* ¶ 57.

---

[3] QC Terme US Holding was formed in June 2016.  Compl. ¶ 15.

The final and operative version is dated August 2, 2017 (the "Operating Agreement"). *Id.* ¶¶ 15, 44, 63 & n.4, Ex. A.

"[A]fter over a year of scouting, an ideal potential location was found in Governors Island." *Id.* ¶ 46. In early 2013, "QC Terme (through Quadratec s.r.l., an Italian entity fully owned and controlled by Defendant MAP . . . ) and Farsura (through his real estate firm Colonnade) jointly submitted a proposal" to the Trust of Governor's Island (the "Trust"), which was seeking tenants to redevelop buildings on the island. *Id.* ¶¶ 46–47. Their proposal won the bid. *Id.* ¶ 47.

Farsura spearheaded efforts needed to move the project forward for several years. *See id.* ¶¶ 53–56, 66–69. The Governor's Island lease was signed in January 2016, *id.* ¶ 59, with QC Terme NY LLC, a special purpose entity formed in 2016, as tenant, *id.* ¶¶ 16, 59. QC Terme US Holding, which had QC Terme US Corp. and SF Capital Partners as its two members, held the equity interest in QC Terme NY LLC. *Id.* ¶ 59.

In October 2017, Whitebridge, a private equity firm led by Francesco Loredan, decided to invest in QC Terme and fund its international expansion. *Id.* ¶¶ 11, 68–70. Whitebridge bought a 47% stake in MAP through Giuturna, a special-purpose investment vehicle. *Id.* ¶¶ 11, 14, 70. Plaintiffs allege that although Whitebridge and Giuturna (the "Whitebridge Defendants") "wanted to invest in QC Terme, they did not like the idea that another stakeholder, Farsura, had acquired a share in the North American business before them, and on quite favorable terms." *Id.* ¶ 72. Plaintiffs claim, upon information and belief, that "the Whitebridge Defendants hatched a plan to force out Farsura." *Id.* In October 2017, Farsura attended a dinner with Loredan, two Whitebridge representatives, the Quadrio Curzio brothers, Varni, and a friend of Farsura's. *Id.* ¶¶ 73–74. At the dinner, Loredan said Farsura's agreement with QC Terme gave him "too good of a deal" and "we need to change that." *Id.* ¶ 75. Loredan also remarked that the Operating Agreement was

unsigned and that it did not protect Farsura if QC Terme went public in Europe. *Id.* ¶ 76. The QC Terme representatives "tr[ied] to talk Farsura down from his position," and although Farsura declined, he was open to considering a proposal. *Id.* ¶ 77.

From about November 2017 to March 2019, the Quadrio Curzio brothers and Varni engaged in talks with Farsura in order to renegotiate Farsura's stake in QC Terme US Holding. *Id.* ¶¶ 78–86. These efforts were unsuccessful. *Id.* In February 2018, Varni texted Farsura that he "d[id] not see any other solution than transferring [Farsura's] shares to QC Terme US Corp[.] and compensation for the activity carried out." *Id.* ¶ 79. Plaintiffs allege that this plan "to deprive Farsura of his shares in QC Terme US Holding . . . by transferring them to QC Terme US Corp., the majority member of QC Terme US Holding . . . was carried out in secret approximately nine months later." *Id.*; *see also id.* ¶¶ 15–16 (alleging that SF Capital Partners' interest in QC Terme US Holding was wrongfully transferred on November 29, 2018). On May 6, 2019, Farsura learned, through QC Terme's counsel, that the equity interests in QC Terme NY LLC were transferred from QC Terme US Holding to another entity and that QC Terme US Holding's only asset was a $500,000 promissory note. *Id.* ¶ 87. Farsura later found out that the entity was QC Terme US Corp. *Id.* ¶ 88. Plaintiffs allege that QC Terme has made public statements that they expect the Governors Island facility to make $30–50 million per year. *Id.* ¶ 91.

Plaintiffs commenced an action against Defendants on September 7, 2021 in Supreme Court, New York County. *See* Compl. On November 2, 2021, QC Terme US Corp. removed the case. ECF Nos. 1, 11. Plaintiffs bring eight causes of action: breach of contract, Compl. ¶¶ 118–25, 142–50, breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 126–31, breach of joint venture agreement, *id.* ¶¶ 132–41, breach of fiduciary duty, *id.* ¶¶ 151–65, aiding and abetting breach of fiduciary duty, *id.* ¶¶ 166–69, 186–91, promissory estoppel, *id.* ¶¶ 170–78,

unjust enrichment, *id.* ¶¶ 179–81, and tortious interference with contract, *id.* ¶¶ 192–98.  Plaintiffs

also demand a constructive trust and declaratory judgment.  *Id.* ¶¶ 182–85, 199–201.

## DISCUSSION

I. <u>Legal Standard</u>

A.  Personal Jurisdiction

"On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff

bears the burden of establishing personal jurisdiction."  *BWP Media USA Inc. v. Hollywood Fan*

*Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d

725, 727 (2d Cir. 2012)).  "Because the Court has not held an evidentiary hearing on this issue,

Plaintiff need only make a prima facie showing of jurisdiction through affidavits and supporting

materials to satisfy this burden."  *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11 Civ. 3673,

2012 WL 123989, at *3 (S.D.N.Y. Jan. 3, 2012); *see also Jonas v. Estate of Leven*, 116 F. Supp.

3d 314, 323 (S.D.N.Y. 2015) (finding that, when the jurisdictional facts are in dispute, "the district

court may consider materials outside the pleadings, including affidavits and other written

materials").

"District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a

two-part analysis, first determining whether there is a statutory basis for exercising personal

jurisdiction, and second deciding whether the exercise of jurisdiction comports with due process."

*BWP Media*, 69 F. Supp. 3d at 349 (quotation marks and citations omitted).  In a federal question

case, the district court "applies the forum state's personal jurisdiction rules, unless a federal statute

specifically provides for national service of process."  *Id.* at 350 (quotation marks, alteration, and

citation omitted).  Jurisdiction comports with due process if "the defendant has certain minimum

contacts with the [s]tate such that maintenance of the suit does not offend traditional notions of

fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quotation marks, alterations, and citation omitted).  Personal jurisdiction must be established for each defendant and for each asserted claim.  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

### B.  Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id*.  The Court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

### II.  Analysis

### A.  Personal Jurisdiction

The Court must first address the threshold issue of personal jurisdiction.  Plaintiffs argue that the Court has general jurisdiction over Defendants QC Terme US Corp. and MAP.  Compl. ¶¶ 20–21.  Plaintiffs also contend that the Court has specific jurisdiction over all four Defendants. *Id.* ¶¶ 22–23.  Defendants concede that the Court has general and specific jurisdiction over QC Terme US Corp., but argue that the Court lacks personal jurisdiction over the three foreign

defendants: MAP, Whitebridge, and Giuturna.  Defs. Mem. at 5–15, ECF No. 35.  The Court concludes that it does not have personal jurisdiction over the foreign defendants.

New York's long-arm statute provides for general jurisdiction under Civil Practice Law and Rules ("CPLR") § 301.  General jurisdiction is proper when "a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (quotation marks, citation, and alterations omitted).  A "corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (citing *Daimler*, 571 U.S. at 139 & n.19).

MAP, a company incorporated in and with its principal place of business in Italy, is not "at home" in New York.  Plaintiffs' allegations do not suggest that this is a "truly exceptional case" where this Court should exercise general jurisdiction over a nondomiciliary defendant.  *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citation omitted).  Plaintiffs instead rely on limited pleadings alleging that MAP is "essentially at home in New York" due to the "actions and activities" of other companies under an agency and "mere department" theory.[4]  Compl. ¶ 20. These conclusory allegations are insufficient to establish jurisdiction.  *Telfair v. Le Pain Quotidien U.S.*, No. 16 Civ. 5424, 2017 WL 1394384, at *1 (S.D.N.Y. Mar. 8, 2017).  Perhaps recognizing the deficiencies in their pleadings, Plaintiffs argue that "the Court need not determine if general jurisdiction exists," Pls. Opp., ECF No. 36, at 14, and bury a request to conduct jurisdictional

---

[4] Plaintiffs concede that *Daimler* rejected the agency theory.  Pls. Opp. at 14.  The Court does not address whether the "mere department theory," which is "closer to yet another theory of general jurisdiction—the alter ego theory," survives *Daimler*.  *Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 344–45 (S.D.N.Y. 2018).  Even if the theory did survive, Plaintiffs do not properly allege facts to support it.

discovery in a footnote, *id.* at 14 n.5.  Without more specific allegations, jurisdictional discovery is inappropriate.  *Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 507 (S.D.N.Y. 2014).  Because MAP is not "at home" in New York, this Court does not have general jurisdiction over MAP.

New York's long-arm statute also provides for specific jurisdiction under CPLR § 302. Plaintiffs invoke CPLR § 302, specifically §§ 302(a)(1) and (a)(3), to argue that this Court has specific jurisdiction over MAP, Whitebridge, and Giuturna.  *See* Compl. ¶¶ 19, 22–23.  Section 302(a)(1) provides that a court may exercise personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1).  Under § 302(a)(3), a court may exercise personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state" if the non-domiciliary:

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

N.Y. C.P.L.R. § 302(a)(3).

Plaintiffs argue that this Court has specific jurisdiction over MAP under CPLR § 302(a)(1) because "MAP . . . transacted business within New York and entered into a contract with Plaintiffs . . . in connection with the supply of goods or services in New York."  Compl. ¶ 22; Pls. Opp. at 6–10.  Plaintiffs contend that this Court has specific jurisdiction over the Whitebridge Defendants "pursuant to CPLR §[]302(a)(3) because . . . they [(1)] committed a tortious act outside the state (*i.e.*, in Italy) that they expected or should have reasonably expected to have consequences in New York, and . . . [(2)] engage in regular business in New York through their holdings in QC Terme

and other business dealings and upon information and belief derive substantive revenue from goods used or consumed or services rendered in New York."  Compl. ¶ 23.

Plaintiffs also fail to meet their burden with respect to specific jurisdiction.  As for MAP, the complaint is devoid of facts specifying what MAP did to transact business in New York or enter into a contract with Plaintiffs to supply goods or services in New York.  N.Y. C.P.L.R. § 302(a)(1).[5]  Plaintiffs rely on group pleading by describing actions taken by (1) "QC Terme," which they define as including QC Terme US and MAP, or (2) persons who are not parties to this lawsuit such as Saverio Quadrio Curzio and Francesco Varni.  *See, e.g.*, Compl. ¶¶ 35, 37–41, 48–51.  Plaintiffs argue that "[t]he New York actions of Saverio [Quadrio Curzio], MAP's principal, are thus obviously attributable to MAP."  Pls. Opp. at 13.  Plaintiffs cannot amend their complaint by making conclusory assertions in opposition to a motion to dismiss.  Though Plaintiffs' use of group pleading is not dispositive, by "conflat[ing] multiple parties and fail[ing] to provide specific allegations, Plaintiff[s] neglect[ their] burden of establishing personal jurisdiction over each defendant."  *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20 Civ. 967, 2021 WL 918556, at *15 (S.D.N.Y. Mar. 10, 2021) (citation omitted).

Plaintiffs' allegations against the Whitebridge Defendants suffer from similar pleading deficiencies.  First, although the complaint states that "all Defendants transact business [in] . . . New York," Compl. ¶ 19, Plaintiffs provide no specific facts which support the Court's exercise of jurisdiction over the Whitebridge Defendants under CPLR § 302(a)(1).  Second, assuming without deciding that Plaintiffs' allegations as to the Whitebridge Defendants meet the situs-of-

---

[5] Plaintiffs do not assert that this Court has jurisdiction over MAP under CPLR § 302(a)(3).  Even if they did, the allegations as pleaded are not sufficient to support jurisdiction under this subsection.

injury test required to warrant § 302(a)(3) jurisdiction,[6] *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999), their allegations are inadequate to sustain jurisdiction under either subpart (i) or (ii) of § 302(a)(3).  Because Plaintiffs do not allege that the Whitebridge Defendants "derive[] substantial revenue from interstate or international commerce,"[7] N.Y. C.P.L.R. § 302(a)(3)(ii), the Court need only consider whether it can exercise its jurisdiction under CPLR § 302(a)(3)(i).  The Court concludes that it cannot.

The complaint contains nothing beyond conclusory allegations concerning the Whitebridge Defendants' business dealings and conduct in New York.  *See Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 498, 500 (S.D.N.Y. 2016).  Plaintiffs claim that the Whitebridge Defendants "engage in regular business in New York through . . . QC Terme and other business dealings" and rely on "information and belief" to assert that the Whitebridge Defendants "derive substantial revenue from goods used or consumed or services rendered in New York."  Compl. ¶ 23.  That is not enough.  For one, "sparse allegations of agency . . . are too conclusory to make a [prima facie] showing of personal jurisdiction."  *SPV Osus Ltd. v. UniCredit Bank Austria*, No. 18 Civ. 3497,

---

[6] Plaintiffs' allegations concerning the Whitebridge Defendants' commission of a tortious act are speculative.  *N. Fork Partners Inv. Holdings, LLC v. Bracken*, No. 20 Civ. 2444, 2020 WL 2521448, at *3 (S.D.N.Y. May 18, 2020); *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 916 (S.D.N.Y. 2016).  Plaintiffs allege that Loredan, the founder and principal of Whitebridge, commented on Farsura's stake in QC Terme US Holding at a dinner.  *See* Compl. ¶¶ 18, 75–76.  Without more facts, this does not support the allegation that "the Whitebridge Defendants hatched a plan to force out Farsura."  *Id.* ¶ 72.

[7] Plaintiffs contend that they have satisfied this element of CPLR § 302(a)(3)(ii), claiming that the Whitebridge Defendants "have a 47% ownership interest in MAP, which itself derives substantial international revenue from its ownership of QC Terme spas across Europe and New York."  Pls. Opp. at 18.  Plaintiffs argue that the Whitebridge Defendants "derive international revenue" in their opposition papers, *id.*, but not in the complaint, which only refers to the Whitebridge Defendants' ownership interest in MAP, not the nature of their revenue, Compl. ¶¶ 11, 70. Regardless, allegations about MAP's finances say nothing about whether the Whitebridge Defendants "derive[] substantial revenue from interstate or international commerce."  CPLR § 302(a)(3)(ii).

2019 WL 1438163, at *8 (S.D.N.Y. Mar. 30, 2019) (alteration in original) (citation omitted). Additionally, "[f]actual allegations made on information and belief must 'be accompanied by a statement of the facts upon which the belief is founded.'"  *Warren v. ResMed Corp.*, No. 21 Civ. 8531, 2022 WL 2334055, at *3 (S.D.N.Y. June 28, 2022) (citation omitted).  Thus, based on the pleadings, the Court does not have specific jurisdiction over any of the three foreign defendants.

Accordingly, Defendants' motion to dismiss Plaintiffs' claims against MAP, Whitebridge, and Giuturna on the basis of lack of personal jurisdiction is GRANTED.

### B.  Failure to State a Claim

The Court, having established jurisdiction over Plaintiffs' claims against QC Terme US Corp., now turns to the merits of Defendants' 12(b)(6) arguments.

When jurisdiction is based on diversity, federal courts apply the choice-of-law rules of the forum state.  *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 255–56 (S.D.N.Y. 2020).  In this case, the Court must apply New York law.  Under New York law, "absent fraud or a violation of public policy, courts will uphold a choice-of-law clause so long as the state selected has sufficient contacts with the transaction."  *Id.* at 256 (citation omitted).  Courts determine the scope of a choice-of-law clause "under the same law that governs the clause's validity—the law of the forum."  *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 333 (2d Cir. 2005).  Again, New York law applies.  Under New York law, "tort claims are outside the scope of contractual choice-of-law provisions."[8]  *Id.* at 335.

---

[8] For a choice-of-law clause to apply to tort claims "arising incident to the contract, the express language of the provision must be sufficiently broad as to encompass the entire relationship between the contracting parties."  *Baker-Rhett v. Aspiro AB*, 324 F. Supp. 3d 407, 417 (S.D.N.Y. 2018) (quotation marks and citation omitted).

1.  Breach of Contract

The parties agree that the Operating Agreement is governed by Delaware law.  Compl. Ex. A § 13.03; Defs. Mem. at 16 n.1; Pls. Opp. at 19.  Under Delaware law, to state a breach of contract claim, the plaintiff must show: (1) "the existence of the contract, whether express or implied"; (2) "the breach of an obligation imposed by that contract"; and (3) "the resultant damage to the plaintiff."  *In re Allianz Glob. Inv'rs U.S. LLC Alpha Series Litig.*, No. 20 Civ. 5615, 2021 WL 4481215 (S.D.N.Y. Sept. 30, 2021) (citation omitted).  A contract "comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms." *Maya Swimwear Corp. v. Maya Swimwear, LLC*, 855 F. Supp. 2d 229, 234 (D. Del. 2012) (citation omitted).

Plaintiffs contend that the Operating Agreement governing QC Terme US Holding is "a valid and enforceable contract"; QC Terme US Corp. breached several express terms of the Operating Agreement; Plaintiff SF Capital Partners "has been deprived of its contractual right to a 22% stake in the North American business of QC Terme" due to QC Terme US Corp.'s "material breaches" of the contract; and Plaintiff SF Capital Partners suffered damages as a result.  Compl. ¶¶ 119–23.  Plaintiffs also argue that the breach "constitutes . . . fraud, willful misconduct and/or gross negligence within the meaning of Section 11 of the Operating Agreement." *Id.* ¶ 124. Defendants contend that there is no contract because the Operating Agreement was never executed and that "the parties positively agreed that the Draft Operating Agreement would not be binding unless and until it was fully executed."  Defs. Mem. at 16–18.

The Court finds that Plaintiffs have sufficiently alleged the existence of a contract between QC Terme US Corp. and Plaintiff SF Capital Partners.  The Court rejects Defendants' argument

that Plaintiffs have failed to plead the existence of a contract because the Operating Agreement was never executed.  Under Delaware law, "[a] member . . . of a[n LLC] . . . is bound by the [LLC] agreement whether or not the member . . . executes the [LLC] agreement."  DEL. CODE ANN. tit. 6, § 18-101(9).  Defendants are correct that parties may express the intention to be bound only when a formal written agreement is drafted and signed.  "The fact that the parties intend to execute a formal agreement, however, is not dispositive.  The question is whether the parties positively agree that there will be no binding contract until the formal document is executed."  *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998).  Whether the parties intended to be bound is a question of fact.  *Eagle Force Holdings, LLC v. Campbell*, 235 A.3d 727, 735 (Del. 2020).[9]

At this stage, where the Court must draw all reasonable inferences in Plaintiffs' favor, the Court concludes that Plaintiffs have met their burden with respect to the breach of contract claim. Any factual disputes must be resolved at a later stage.  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 405 (2d Cir. 2015).

Accordingly, Defendants' motion to dismiss Plaintiffs' breach of contract claims against QC Terme US Corp. is DENIED.

### 2.   Breach of the Implied Covenant of Good Faith and Fair Dealing

To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege: (1) "a specific implied contractual obligation"; (2) "a breach of that obligation by the defendant"; and (3) "resulting damage to the plaintiff."  *Kelly v. Blum*, No. 4516, 2010 WL 629850,

---

[9] Defendants argue that QC Terme US Corp. and SF Capital Partners could not have intended to be bound because other individuals, namely the Quadrio Curzio brothers and Farsura, "struck a deal" and neither entity "was established until 2016."  Defs. Reply at 9, ECF No. 39.  Although the Court cannot dispose of a factual dispute on a motion to dismiss, the complaint alleges that QC Terme US Corp. and Plaintiff SF Capital Partners were parties to the Operating Agreement. Compl. Ex. A. at 1.

at *13 (Del. Ch. Feb. 24, 2010) (citation omitted).  General allegations of bad faith are not enough; a "plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract."  *Id.* (emphasis and citation omitted). Further, the implied covenant cannot be used "to override the express terms of the contract." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).

Plaintiffs allege that QC Terme US Corp.'s breach of the implied covenant "deprived [Plaintiff SF Capital Partners] of its contractual right to a 22% stake in the North American business of QC Terme."  Compl. ¶ 130.  According to the complaint, however, Plaintiffs' 22% stake in the North American business of QC Terme is governed by express provisions of the Operating Agreement.  *See id.* ¶ 64 (citing Compl. Ex. A., Sched. A).  This is fatal to Plaintiffs' breach of the implied covenant claim.  *3M Co. v. Neology, Inc.*, No. 07 Civ. 89, 2019 WL 2714832, at *11 (Del. June 28, 2019).

Accordingly, Defendants' motion to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing against QC Terme US Corp. is GRANTED.

### 3.  Breach of Fiduciary Duty

New York applies the internal affairs doctrine to claims for breach of fiduciary duty. *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 607 (S.D.N.Y. 2011).  Specifically, New York applies the law of the state of incorporation to breach of fiduciary duty claims.  *Id.* Because QC Terme US Holding is a Delaware limited liability company, Delaware law governs Plaintiffs' fiduciary duty claims.  *See id.*

To state a claim for breach of fiduciary duty, a plaintiff must demonstrate: (1) the existence of a fiduciary duty and (2) a breach of that duty.  *Id.*  The Delaware Limited Liability Company Act ("LLC Act") aims to "provide members [of an LLC] with broad discretion in drafting the

[LLC] Agreement and to furnish default provisions when the members' agreement is silent." *Kelly*, 2010 WL 629850, at *10 (citation omitted) (second alteration in original). The LLC Act "permits LLC contracting parties to expand, restrict, or eliminate duties, including fiduciary duties, owed by members and managers to each other and to the LLC." *Id.* (citation omitted). "[U]nless the LLC agreement in a manager-managed LLC explicitly expands, restricts, or eliminates [the] traditional fiduciary duties [of loyalty and care], managers owe those duties to the LLC and its members and controlling members owe those duties to minority members. *Id.* (citation omitted).

Plaintiffs argue that QC Terme US Corp., "as the majority member of the [LLC] QC Terme US Holding . . . owed fiduciary duties to SF Capital Partners, as minority shareholder in QC Terme US Holding." Compl. ¶ 114; *see also id.* ¶ 152 (claiming that QC Terme US Corp. owed SF Capital Partners "an unremitting duty of loyalty"); *id.* ¶ 154 (asserting that the Operating Agreement "impose[s] a fiduciary standard of entire fairness on Defendant QC Terme US Corp.'s dealings toward Plaintiff SF Capital Partners"). Defendants contend that QC Terme US Corp. did not owe Plaintiffs any fiduciary duties because § 7.08(b) explicitly waived the fiduciary duties Plaintiffs assert "stem[] . . . from law and equity." Defs. Mem. at 23–24. Plaintiffs argue that: (1) the § 7.08 "carveout runs to the 'Board' of QC Terme, [and] the [c]omplaint alleges that the Board of QC Terme effectuated the Wrongful Asset Transfer"; (2) Delaware law prohibits waiver of the duty to act in good faith; (3) §§ 3.05 and 3.06 of the Operating Agreement "impose separate duties of loyalty and good faith that apply regardless of any exculpation provision"; and (4) QC Terme US Corp. owes fiduciary duties as a controlling shareholder. Pls. Opp. 25–26 (emphases omitted).

The Operating Agreement disclaims the fiduciary duties of loyalty and care except for QC Terme US Holding's Board:

> (b) To the fullest extent permitted by applicable law, this Agreement is not intended to, and does not, create or impose any fiduciary duties on the Members or their

> Affiliates (including the Board), other than (*in the case of the Board*) the duty of
> loyalty and the obligation to act in the best interests of the Company. Further,
> except (*in the case of the Board*) with respect to the duty of loyalty and the
> obligation to act in the best interests of the Company, to the fullest extent permitted
> by applicable law or equity, the Members and the Company hereby waive any and
> all fiduciary duties that, absent such waiver, may be implied by law or in equity,
> and in doing so, recognize, acknowledge and agree that their duties and obligations
> to one another and to the Company are only as expressly set forth in this Agreement.

Compl. Ex. A § 7.08(b) (emphases added).  Because the Operating Agreement eliminates the traditional fiduciary duties that QC Terme US Corp., as a controlling member of the LLC, would owe SF Capital Partners as a minority member of the LLC, Plaintiffs have not shown the existence of a fiduciary duty.  Their arguments in opposition appear to attempt to rewrite the complaint,[10] misstate applicable law,[11] or rely on caselaw not involving LLCs.[12]

Plaintiffs' arguments related to §§ 3.05 and 3.06 of the Operating Agreement are duplicative of their contractual claims.  *CIM Urban Lending GP, LLC v. Cantor Commercial Real Estate Sponsor, L.P.*, No. 11060, 2016 WL 768904, at *3 (Del. Ch. Feb. 26, 2016).  Under the Operating Agreement, "the Members . . . acknowledge and agree that their duties and obligations to one another and to [QC Terme US Holding] are only as expressly set forth in th[e Operating]

---

[10] Plaintiffs try to cure logical gaps in the complaint by arguing that "the Board of QC Terme effectuated the Wrongful Asset Transfer—because only the Board could have approved it."  Pls. Opp. at 25 (emphasis omitted).  Even if it were properly pleaded in the complaint, Plaintiffs' claim would involve an alleged breach of fiduciary duty on the part of QC Terme US Holding.  *See* Compl. Ex. A § 1.01 (defining "Board" as "the Board of Managers of the Company" and "Company" as QC Terme US Holding LLC").  QC Terme US Holding is not a party to this action.
[11] Plaintiffs omit the full text of the LLC Act, which specifies that an LLC agreement "may not eliminate *the implied contractual covenant of* good faith and fair dealing."  DEL. CODE ANN. tit. 6, § 18-1101(c) (emphasis added); *see also* Pls. Opp. at 25 (citing *Brookstone Partners Acquisition XVI, LLC v. Tanus*, No. 7533, 2012 WL 5868902, at *4 n.42 (Del. Ch. Nov. 20, 2012) (describing a specific company's contractual language that did not eliminate the implied covenant of good faith and fair dealing)).
[12] Pls. Opp. at 25–26 (citing *In re SAIC Inc. Derivative Litig.*, 948 F. Supp. 2d 366, 380–81 (S.D.N.Y. 2013) (shareholder derivative suit against a corporation); *Ivanhoe Partners v. Newmont Min. Corp.*, 535 A.2d 1334, 1344 (Del. 1987) (hostile bidder suit against corporation's board of directors)).

Agreement." Compl. Ex. A. § 7.08(b). In other words, the obligations set forth in §§ 3.05 and 3.06 are based in contract; they do not establish separate fiduciary duties. *CIM Urban Lending GP, LLC*, 2016 WL 768904, at *3; *Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, No. 7668, 2015 WL 394011, at *7–8 (Del. Ch. Jan. 29, 2015).

Because Plaintiffs have failed to establish the existence of a fiduciary duty, the Court does not need to reach the question of whether Plaintiffs have properly alleged breach. Therefore, the Court finds that Plaintiffs have failed to state a claim for breach of fiduciary duty.

Accordingly, Defendants' motion to dismiss Plaintiffs' breach of fiduciary duty claims against QC Terme US Corp. is GRANTED.

### 4.  Constructive Trust

"To be entitled to a constructive trust under New York law, a party should establish four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." *Winklevoss Capital Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 719 (S.D.N.Y. 2019) (citation omitted).[13] Because the doctrine is "equitable in nature," the constructive trust factors should not be "rigidly limited." *Pagliai v. Del Re*, No. 99 Civ. 9030, 2001 WL 220013, at *6 (S.D.N.Y. Mar. 7, 2001) (citation omitted), *aff'd* 34 F. App'x 36 (2d Cir. 2002); *see also Ruggerio v. Estate of Poppiti*, No. 18961, 2005 WL 517967, at *3 (Del. Ch. Feb. 23, 2005) ("A constructive trust is 'an equitable remedy of great

---

[13] The result is the same whether the Court applies New York or Delaware law. Plaintiffs base their constructive trust claim on a theory of unjust enrichment. Compl. ¶ 183. Under Delaware law, constructive trusts can be imposed where a defendant has been unjustly enriched. *Pedrick v. Roten*, No. 11 Civ. 1221, 2013 WL 351667, at *4–5 (D. Del. Jan. 29, 2013). However, unjust enrichment claims are duplicative when recovery is possible under a contract. *Intermec IP Corp. v. TransCore, LP*, No. 03 Civ. 254, 2021 WL 3620435, at *17–18 (Del. Aug. 16, 2021).

flexibility and generality.'").  The lack of a fiduciary relationship "does not defeat the imposition of a constructive trust."  *Pagliai*, 2001 WL 220013, at *6.

Plaintiffs' demand for a constructive trust arises from the same facts as their breach of contract claim.  The Court determines that this claim must be dismissed as duplicative of Plaintiffs' contract claims.  *N. Shipping Funds I, LLC v. Icon Capital Corp.*, No. 12 Civ. 3584, 921 F. Supp. 2d 94, 107 (S.D.N.Y. Jan. 24, 2013).

Accordingly, Defendants' motion to dismiss Plaintiffs' demand for a constructive trust is GRANTED.

### 5.   Declaratory Judgment

"It is within the broad discretion of the trial court whether to exercise declaratory jurisdiction."  *Dubov v. Lewis*, No. 18 Civ. 3854, 2019 WL 1060652, at *2 (S.D.N.Y. Mar. 6, 2019) (citation omitted).  The Court must consider whether a declaratory judgment "will serve a useful purpose in clarifying and settling the legal relations at issue" or "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Id.* (citation omitted).

Plaintiffs allege that there is "an actual dispute and controversy . . . concerning Plaintiffs' rights to the QC Terme spa business in North America, including but not limited to whether Plaintiff Farsura has a 22% stake in that business as an equity partner[.]"  Compl. ¶ 200.  Plaintiffs seek declaratory relief "stating that they own 22% of the QC Terme spa business in North America."  *Id.* ¶ 201. Because this cause of action is duplicative of Plaintiffs' breach of contract claim, *see* Compl. ¶ 122 ("Plaintiff SF Capital Partners has been deprived of its contractual right to a 22% stake in the North American business of QC Terme."), it shall be dismissed.

Accordingly, Defendants' motion to dismiss Plaintiffs' demand for a declaratory judgment is GRANTED.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED on:

- Count II, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing;

- Count III, Plaintiffs' breach of joint venture agreement claim;

- Count IV, Plaintiffs' breach of contract claim against MAP;

- Counts V and Count VI, Plaintiffs' breach of fiduciary duty claims;

- Counts VII and XI, Plaintiffs' claims for aiding and abetting breach of fiduciary duty;

- Count VIII, Plaintiffs' promissory estoppel claim;

- Count IX, Plaintiffs' unjust enrichment claim;

- Count XII, Plaintiffs' tortious interference with contract claim; and

- Counts X and XIII, Plaintiffs' demands for a constructive trust and declaratory judgment.

Defendants' motion to dismiss the complaint is otherwise DENIED.  The Clerk of Court is directed to terminate the motions at ECF Nos. 34 and 43.

SO ORDERED.

Dated: September 13, 2022
New York, New York

_____
ANALISA TORRES
United States District Judge