USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  11/21/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEFANO FARSURA and SF CAPITAL                    :
PARTNERS LLC,                                     :
                                                  :
                          Plaintiffs,             :
                                                  :
            - against -                           :
                                                  :
                                                  :
QC TERME US CORP.,                                :
                                                  :
                          Defendant.              :
------------------------------------------------------------X

21-CV-9030 (AT) (RWL)

**DECISION & ORDER:**
**<u>MOTION TO AMEND</u>**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiffs Stefano Farsura and SF Capital Partners, LLC (collectively "Plaintiffs" or "Farsura") claim that Defendant QC Terme US Corp. ("Defendant" or "QC Terme US") breached its contractual and fiduciary duties to Farsura with respect to development of spa facilities in the United States, including on Governors Island, New York.  Farsura's complaint initially named three additional defendants – Italian entities Map S.r.l. ("Map"), Whitebridge Investments S.p.A. ("Whitebridge"), and Giuturna Investments S.p.A (collectively, the "Italian Defendants").  Since then, Judge Torres granted the Italian Defendants' motion to dismiss for lack of personal jurisdiction.  In the wake of that decision, and based in part on information learned during discovery, Farsura seeks to amend the complaint to include additional allegations establishing personal jurisdiction over Whitebridge and Map's successor entity, QC Terme S.r.l.  For the reasons set forth below, the Court finds good cause to amend and grants Farsura leave to file the proposed amended complaint except as otherwise noted.

2 of 10

## BACKGROUND

Farsura commenced this action on November 2, 2021.  (Dkt. 1.)  On February 2, 2022, the Italian Defendants moved to dismiss for lack of personal jurisdiction and failure to state a claim.  For its part, QC Terme US moved to dismiss for failure to state a claim.  (Dkts. 34-35.)  On September 13, 2022, Judge Torres issued an order dismissing the Italian Defendants for failure to sufficiently allege facts establishing personal jurisdiction over them (the "Dismissal Order").  (Dkt. 163 at 7-12.)  The Court also dismissed all claims, except for breach of contract, against QC Terme US.  (Dkt. 163 at 12-20.)  On November 9, 2022, the Court reinstated Farsura's claim for breach of fiduciary duty against QC Terme US as an alternative theory to the breach of contract claim.  (Dkt. 220.)

Fact discovery closed on October 7, 2022.  (*See* Dkt. 79 (granting request to modify discovery schedule).)  Depositions of the Italian Defendants were scheduled to take place in September 2022, but QC Terme US and the Italian Defendants cancelled them after entry of the Dismissal Order.  (*See* Dkt. 219 at 4.)  On October 11, 2022, at the parties' request, the Court stayed expert discovery in part due to the parties' intent to file summary judgment motions addressing whether the parties entered into an enforceable contract. (Dkt. 194.)  On October 21, 2022, the parties filed pre-motion letters previewing their respective arguments.  (Dkts. 200, 205.)

On October 10, 2022, Farsura requested leave to file an amended complaint to bolster allegations that would establish personal jurisdiction over the Italian Defendants. The allegations Farsura seeks to add in part are based on information that Farsura had in hand even before filing the original complaint, but also in part on information first learned during discovery, including after entry of the Dismissal Order.  Farsura argues

that he acted diligently, considering the timing of the Dismissal Order and newly discovered information. (Dkt. 193.) In opposition, QC Terme US argues that the additional allegations were either known to Farsura or publicly available at the outset of the action; that the allegations are futile as they merely add details to allegations that the Court already found deficient to establish personal jurisdiction; and that QC Terme US, as well as the Italian Defendants, will be prejudiced given the closure of fact discovery and the case being ripe for summary judgment motions. (Dkt. 198.)

The parties have filed detailed letter briefs, which the Court finds sufficient for determining the request for leave to amend. (*See* Dkt. 193, 198, 219.) The Court also heard extensive argument at a conference held on November 17, 2022.

## LEGAL STANDARDS

Motions to amend are principally governed by Federal Rule of Civil Procedure 15(a) ("Rule 15(a)"). As the rule provides, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Aetna Casualty and Surety Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005). A district court, however, "has discretion to deny leave for good reason." *McCarthy v. Dun and Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). The Second Circuit has held that a Rule 15(a) motion "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Casualty*, 403 F.2d at 603-04 (quoting *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)). Delay alone generally is an insufficient justification for the denial of a motion to amend under Rule 15(a). *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993).

Delay becomes more significant, however, when a party files a motion to amend after the deadline for doing so established in a court's scheduling order.   Under Rule 16(b), leave to amend requires "good cause" following expiration of the deadline.   Fed. R. Civ. P. 16(b)(4).   That is a more exacting standard than Rule 15(a):   "Under Rule 16(b), a party moving to amend after the applicable deadline must demonstrate good cause. Whether good cause exists depends on the diligence of the moving party.   In other words, the movant must show that the deadlines [could not have been] reasonably met despite its diligence."  *Volunteer Fire Association of Tappan, Inc. v. County of Rockland*, No. 09-CV-4622, 2010 WL 4968247, at *3 (S.D.N.Y. Nov. 24, 2010) (internal citations and quotation marks omitted); *accord Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340 (2d Cir. 2000) ("despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.   Moreover, we agree … that a finding of 'good cause' depends on the diligence of the moving party").

The burden of showing diligence is borne by the moving party.   *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014).   "A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline."  *Id*. at 174-75.   Although "the primary consideration is whether the moving party can demonstrate diligence," however, "[i]t is not ... the only consideration."  *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).   "[W]here a party's motion to amend would require altering a court's scheduling order, the party must satisfy both Federal Rules of Civil Procedure 15 and 16 to be permitted to amend."  *International*

*Technologies Marketing, Inc. v. Verint Systems, Ltd.*, 850 F. App'x 38, 43 (2d Cir. 2021) (internal quotation marks omitted).

Here, the Court's scheduling order required that any motion to amend the pleadings be made by February 3, 2022.  (*See* Dkt. 29 at No. 3 (setting deadline to file amended pleadings as 30 days from entry of the scheduling order, entered on January 4, 2022).) Accordingly, the "good cause" standard of diligence applies, together with considerations of futility, bad faith, and prejudice.  *See also* Judge Torres Individual Practices Rule III.B.iv (generally requiring good cause be shown where plaintiff fails to address deficiencies identified by defendant prior to filing of motion to dismiss).

## DISCUSSION

The pivotal issue to resolving Farsura's motion is whether he was sufficiently diligent.  There is no suggestion of bad faith, and neither futility nor prejudice warrant prohibiting amendment.[1]  The Court cannot conclude that the additional allegations to establish personal jurisdiction would be futile – it is precisely the lack of detail that Judge Torres found wanting and which Farsura now seeks to remedy.[2] The Court also finds no

---

[1] The Court recognizes that diligence is a threshold determination for good cause.  *See Securities and Exchange Commission v. Rio Tinto plc*, No. 17-CV-7994, 2020 WL 2504008, at *7 (S.D.N.Y. March 9, 2020), *R. & R. adopted*, 2021 WL 807020 (S.D.N.Y. March 3, 2021) (hereinafter "*Rio Tinto*").  In this instance, the Court first briefly addresses the other relevant criteria as they do not pose an impediment to amendment here, and the critical issue is diligence.

[2] Of course, the Italian Defendants would not be precluded from moving to dismiss the amended complaint for lack of personal jurisdiction or failure to state a claim should they deem it appropriate to do so.  In any event, the amended pleading should not include any claim previously dismissed (and not reinstated) by Judge Torres for failure to state a claim and which Farsura included in the proposed amended complaint merely to preserve his rights, such as Count II (Breach of Implied Covenant and Fair Dealing); Count VIII

substantial prejudice from allowing the amendment.  Prior to the dismissal order, the Italian Defendants already had produced their documents, and the parties had planned on the Italian Defendants being deposed.[3]  Expert discovery is stayed.  And, while the parties are on the cusp of filing cross-motions for summary judgment on the issue of whether there is an enforceable contract, they will still be able to do so even if at a later time.

Diligence, however, is a closer question.  QC Terme US breaks down Farsura's "new" allegations into eleven facts (the "New Facts Chart").[4]  (Dkt. 198 at 6-8.)  Of those eleven facts, the Court finds that at least three of them are material, were not previously known to Farsura, and were learned during discovery.  (*See* New Facts Chart items 6, 10, 11.[5])

---

(Promissory Estoppel); Count X (Constructive Trust); and Count XIII (Declaratory Judgment).

[3] Concerns about expense and logistics of deposing persons in Italy can be addressed by conducting depositions remotely.

[4] Item numbers correspond to the rows of the New Facts Chart even though the rows are not expressly numbered.

[5] Item 6 alleges that a proposal submitted on March 13, 2013 was also made on behalf of one of the Italian Defendants.  Defendant cites allegations from paragraphs 47 and 50 of the initial Complaint that purportedly advanced the same proposition.  The Court does not agree.  The cited allegations from the initial Complaint merely assert that Quadratec S.r.l. acted as an agent, not that it acted also on its own behalf.  With respect to item 10, Defendant correctly notes that the Varni Affidavit cited as support by Farsura does not use the term "joint."  (*See* Dkt. 198 at 4.)  The Court agrees with Farsura, however, that the presence of absence of that term is not dispositive to the factual allegation of joint action by QC Terme US and the Italian Defendants.  With respect to item 11, Defendant cites an article pre-dating the lawsuit as containing information about "expected revenue from New York."  Although the article mentions Italian Defendant Whitebridge's investment in QC Terme US, it does not contain the more specific information concerning

At least four-and-a-half of the "new" facts, however, were known to Farsura prior to filing suit as demonstrated by reference to specific documents that were produced by Farsura.  (*See* New Facts Chart items 2, 4, 5, 7, 8.)  Farsura argues that he did not previously plead those facts because he did not yet have the benefit of the Court's ruling indicating what degree of specificity would be required and, in any event, standing alone without additional new facts learned during discovery, those earlier facts would not have been enough to establish personal jurisdiction under the Court's ruling.  (Dkt. 219 at 3.) Among other cases invoked for support, Farsura cites *Allianz Global Investors GmbH v. Bank of America Corp.*, 473 F. Supp.3d 361, 365 (S.D.N.Y. 2020) (permitting leave to amend where plaintiffs sought "to provide the greater specificity that the [district court] found was lacking as to [the dismissed defendants] now that they have the 'benefit of her ruling'"), which, in turn, relied on *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

Both *Allianz* and *Loreley* are distinguishable.  Those cases dealt with motions to amend under only the Rule 15(a) standard, not the higher bar of good cause required by Rule 16(b).  The same is true for other Second Circuit cases cited by Farsura.  *See Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019); *Barron v. Helbiz, Inc.*, 2021 WL 4519887, at *3 (2d Cir. Oct. 4, 2021).  *See generally Rio Tinto*, 2020 WL 2504008, at *8 (similarly distinguishing *Lorelely*).  Accordingly, Farsura cannot claim good cause for holding back facts about which he knew and could have been asserted earlier.  *Id.*

---

the Italian Defendants' expected revenue from New York and the Governors Island project.

The remaining three-and-a-half new facts, according to QC Terme US, could have been gleaned from publicly available information, specifically the website of the Italian Chamber of Commerce.  (*See* New Facts Chart items 1, 3, 5, 9.)  Farsura thus "should have known" of those facts, *Fresh Del Monte Produce,* 304 F.R.D. at 175, and cannot rely on them as the basis for his motion to amend.  *See International Technologies Marketing*, 850 F. App'x at 43 (affirming finding that good cause was lacking for amendment adding "publicly available (and easily accessible) information"); *Morgan Art Foundation Ltd. v. McKenzie*, No. 18-CV-4438, 2021 WL 863264, at *7 (S.D.N.Y. Jan. 22, 2021) (information "already in the public domain … cannot justify a late motion to amend").

That argument falls short, however, because the Chamber of Commerce material referenced by QC Terme US does not supply certain specific facts learned by Farsura at deposition that are critical to Farsura's personal jurisdiction allegations.  (*See*, *e.g.*, Dkt. 219 at 3 (explaining that "[i]t was not until depositions that Plaintiffs obtained admissions showing that" certain individuals were acting on behalf of the Italian Defendants when they took particular actions "vis-à-vis Plaintiffs in New York").)

The depositions on which Farsura relies as providing newly discovered information supporting personal jurisdiction over the Italian Defendants were taken between September 19-26, 2022.  (*See* Dkt. 193 at 2.)  Approximately two weeks later, Farsura filed his motion to amend.  Farsura thus acted diligently.  *See City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345, 2019 WL 2324587, at *2 (S.D.N.Y. May 29, 2019) ("courts in this District have found that a time period of less than three months satisfies the diligence standard under Rule 16"); *Permatex, Inc. v. Loctite Corp.*, No. 03-CV-943, 2004

WL 1354253, at *3 (S.D.N.Y. 2004) (finding diligence where plaintiffs moved to amend almost two months after deposition revealed new information).

At oral argument, QC Terme US emphasized two cases in particular that it contends warrant denying Farsura's motion to amend: *Rio Tinto* and *Essar Steel Algoma Inc. v. Southern Coal Sales Corp.*, No. 17-MC-360, 2019 WL 4391506 (S.D.N.Y. Aug. 27, 2019), *R. & R. adopted*, 2019 WL 4392514 (S.D.N.Y. Sept. 13, 2019). In both cases, the Court denied motions to amend under the Rule 16 good cause standard in part because much or all of what the parties sought to add by way of amendment was known or should have been known by them at an earlier time. *See Rio Tinto*, 2020 WL 2504008, at *10-12; *Essar Steel Algoma*, 2019 WL 4391506, at *3.

Both cases, however, are materially distinguishable from the instant case. In *Rio Tinto*, the plaintiff sought to triple the size of its pleadings, expanding from 50 pages to 129 pages, and from 176 paragraphs to 414, only 3 of which arguably were based on information from later-produced documents, and even those were of little significance. 2020 WL 2504008, at *6, 11. Indeed, with respect to the key issues found wanting by the Court in dismissing the SEC's claims – scienter and other fraud elements – the SEC did not argue that it did not have any of the factual information prior to the deadline for moving to amend. *Id.* at *11. Moreover, unlike here, the proposed amendments sought to introduce "previously unmentioned topics." *Id.* at *6. In *Essar Steel Algoma*, during expert discovery, defendant sought to assert a variety of counterclaims and attempted to defend its delay based on an explanation this Court found "specious" and which was belied by the defendant's own arguments. 2019 WL 4391506, at *3. Farsura's basis for

amendment may be somewhat thin, but it is not specious, and nevertheless supports a finding of good cause.

In sum, the Court finds that Farsura acted with sufficient diligence to find good cause and that neither futility, nor bad faith, nor prejudice warrant denying him the opportunity to amend.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend their complaint consistent with this order is GRANTED.  The amended pleading shall be filed within seven days of entry of this order.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:  November 21,2022
        New York, New York